IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. BRADLEY MAULE,<br><br>    *Plaintiff*,<br><br>  v.<br><br>ANHEUSER BUSCH, LLC, and<br>EVERBRITE, LLC,<br><br>    *Defendants*. | CIVIL ACTION<br>No. 17-00461 |

**PAPPERT, J.**                         July 27, 2018

## MEMORANDUM

  Photographer Bradley Maule contends that Anheuser Busch and Everbrite, a neon sign manufacturer, created a Budweiser beer sign that copied his photograph of the Philadelphia skyline. Maule sued the Defendants, alleging copyright infringement for which he seeks damages as well as injunctive and declaratory relief (Counts I, II and III), violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* (Count IV), violations of the Lanham Act, 15 U.S.C. § 1125 *et seq.* (Count V), state law claims for unfair competition and violations of the Pennsylvania Trademark Act (Count VI) and commercial disparagement (Count VII). (Second Am. Compl., ECF No. 12.) The Defendants filed a Motion to Dismiss (ECF No. 16), and in his Response, Maule voluntarily dismissed Counts V, VI and VII. (Pl.'s Resp. in Opp. to Mot. to Dismiss at 5, ECF No. 23.) The Court now grants the Defendants' Motion with respect to Counts I through IV for the reasons that follow.

1

I

Maule, as he describes himself, is a "well-known and highly respected Philadelphia photographer and journalist." (Second Am. Compl., ¶ 8.) In May 2005, he took a picture of the Philadelphia skyline from the eighteenth floor of the since demolished Penn Tower Hotel in West Philadelphia. (*Id.* at ¶ 9.) The wide angle color photograph captures Center City Philadelphia as the sun is setting, accentuating light and shadows on buildings in the skyline. (*Id.* at ¶ 10; Compl., Ex. B, ECF No. 1-5.) The scene features a number of prominent buildings set against a blue sky with white clouds, including One Liberty Place, Two Liberty Place, the BNY Mellon Center and 1818 Market Street. (Ex. B.) The photograph also captures a sense of depth by showing parts of the City in the foreground, including Franklin Field and a park, and beyond that, the Schuylkill Expressway and River. (*Id.*)

After taking the photograph, Maule altered it by adding images of two buildings which at that time did not exist—the subsequently constructed Comcast Center and Mandeville Place, a building which as it turns out was never built. (Second Am. Compl., ¶ 11; Ex. B.) To achieve this effect, Maule inserted digital images of the Comcast Center and Mandeville Place in the locations where they were to be built. (Second Am. Compl., ¶ 11; Ex. B.) The images of both buildings are scaled, making their size appear appropriate with respect to other Center City buildings. (Ex. B.) Maule also altered the text of a billboard on top of a building in the picture's lower right foreground. (Second Am. Compl., ¶ 11; Compl., Ex. A, ECF No. 1-4; Ex. B.) The billboard originally read "Locust on the Park; Luxury Loft Apartments," but Maule changed it to read "Visit Philly Skyline Dot Com," a website he owned. (Second Am.

Compl., ¶ 11; Ex. B.)  Maule named the photograph "Projected Skyline 2008," posted it on his website and registered the picture with the United States Copyright Office on May 13, 2008.  (Second Am. Compl., ¶¶ 12–13; Compl., Ex. D, ECF No. 1-7.)



On September 27, 2015, Maule saw the Defendants' neon sign in the window of the Spruce Street Market.  (Second Am. Compl., ¶ 14.)  The sign is a condensed, less detailed rendering of the Philadelphia skyline.  (*Id.* at ¶¶ 14–16; Compl., Ex. E, ECF No. 1-8.)  It has no background but includes an outline of One Liberty Place, Two Liberty Place, the BNY Mellon Center, 1818 Market Street, the now-completed Comcast Center and the non-existent Mandeville Place.  (Ex. E.)  All of the buildings depicted on the sign are illustrated in bright red, with black lines outlining the floors and windows of the buildings.  (*Id.*)  The only exception is the Comcast Center, which is rendered entirely in white with grey lines delineating the shape of the building.  (*Id.*)  The sign does not feature any contrast in light or shadow, nor is there any sense of depth or scale between buildings, making the skyline appear flat.  (*Id.*)  The sign does

not depict Franklin Field, the park, the Schuylkill Expressway or River, nor does it feature the billboard depicted in Maule's photograph advertising his website. (*Id.*)



Maule believes that the Defendants' sign copied his photograph, particularly because it includes Mandeville Place. (Second Am. Compl., ¶¶ 14–16.) Additionally, Maule noticed a sticker on the back of the sign identifying Anheuser Busch as the owner of the copyright for the sign. (*Id.* at ¶ 18.) Maule subsequently discovered the same advertising sign at twenty other locations throughout Philadelphia. (*Id.* at ¶¶ 19–23.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that

[a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

5

### III

#### A

##### i

Maule alleges in Count I that the Budweiser sign infringes on the copyright he owns for his photograph, and seeks injunctive and declaratory relief in Counts II and III. (Second Am. Compl., ¶¶ 44–66.) To establish a claim for copyright infringement, Maule must allege: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of [his] work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Unauthorized copying may be demonstrated "by showing that the defendant had access to the copyrighted work and that the original and allegedly infringing works share substantial similarities." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207–208 (3d Cir. 2005) (citing *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002)).

Substantial similarity encompasses two considerations: "(1) whether the defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation." *Id.* (quoting *Atari, Inc. v. North American Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). First, "the fact-finder must decide whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986). Even if copying is proven, the second step must be satisfied, which focuses on "whether the substantial similarities relate to protectable material." *Kay Berry, Inc.*, 421 F.3d at 208 (quoting *Dam Things*, 290 F.3d at 562); *see also Nimmer on Copyright*

§ 2A.08 (explaining that "in comparing defendant's product to plaintiff's photograph, the comparison focuses exclusively on those parts of plaintiff's photograph that are original to its author"). This second step requires the fact-finder to determine "whether a 'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work." *Dam Things*, 290 F.3d at 562 (citing *Whelan Assocs.*, 797 F.2d at 1232). This test has been described as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* (quoting *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991)).

ii

The Defendants do not contest that they had access to Maule's photograph before creating their sign. (Mot. at 7, ECF No. 18.) They argue, however, that even if they copied Maule's photograph, there is no substantial similarity between their sign and the protected elements of Maule's work. (*Id.* at 1, 7.) Several courts, including (albeit in non-precedential opinions) the Third Circuit Court of Appeals, have held that a District Court may resolve the question of substantial similarity on a motion to dismiss. *See, e.g.*, *Tanikumi v. Walt Disney Co.*, 616 Fed. App'x 515 (3d Cir. 2015); *Winstead v. Jackson*, 509 F. App'x 139 (3d Cir. 2013); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) ("it is entirely appropriate for a district court to resolve [substantial similarity] as a matter of law, either because the similarity… concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury… could find that the two works are substantially similar"); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002); *Nelson v. PRN Prods., Inc.*, 873 F.2d

1141 (8th Cir. 1989); *Curtin v. Star Editorial Inc.*, 2 F. Supp. 2d 670, 673 (E.D. Pa. 1998) (determining substantial similarity on motion to dismiss). Where the plaintiff's and defendant's works are attached to the pleadings, the Court may "compare the two works," with the works themselves "supersed[ing] and control[ling] any contrary allegations, conclusions, or descriptions of the works contained in the pleadings." *Nimmer on Copyright* § 12.10. Where the complaint and exhibits attached "suffice to convince the court as a matter of law that no jury could find the existence of substantial similarity," the Court may dismiss the case. *Id.* No reasonable jury could find that the neon beer sign and Maule's photograph are substantially similar.

B

i

Maule cites three aspects of his picture the Defendants allegedly copied: (1) the "Visit Philly Dot Com" sign; (2) buildings in the Philadelphia skyline; and (3) the nonexistent Mandeville Place.[1] (Resp. at 4.) First of all, the digitally enhanced Visit Philly Dot Com billboard is not even in the Budweiser sign and provides no support for Maule's claim. *See* (Second Am. Compl., ¶ 14; Ex. E); *see also Dun & Bradstreet*, 307 F.3d at 206 (explaining that copyright infringement requires "unauthorized *copying* of original elements") (emphasis added).

Second, the Philadelphia skyline cannot be copyrighted. Components of a work that exist in the public domain (including existing buildings) are unoriginal and unprotected by copyright law. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499

---

[1] Maule also emphasizes the fact that he took his picture from the eighteenth floor of the Penn Tower Hotel. (Second Am. Compl., ¶ 9.) He argues that because the hotel no longer exists, it is impossible to replicate his photograph. (*Id.*) This does not help his argument because "[i]n no case does copyright protection for an original work of authorship extend to any…process[.]" 17 U.S.C. § 102(b); *see also Feist*, 499 U.S. at 356.

8

U.S. 340, 348 (1991) ("Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."); *see also Nimmer on Copyright* § 2A.08 ("Insofar as the underlying subject matter preexisted the photograph…which in turn merely captured the reality of its existence, that subject matter is manifestly unoriginal to the photographer."). With the exception of the depiction of Mandeville Place, the Philadelphia skyline shown in the advertising sign is unoriginal to Maule and exists independently of any photograph.[2] *See, e.g.*, *Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62, 65 (3d Cir. 1978) ("the fact that the same subject matter may be present in two [works] does not prove copying or infringement. Indeed, an artist is free to consult the same source for another original [work]."); *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 181 (1st Cir. 2013) ("Where the photographer is uninvolved in creating his subject, that subject matter—whether a person [or] a building…is equivalent to an idea that the law insists be freely available to everyone."); *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 135 (2d Cir. 2003) ("[C]opying is not unlawful if what was copied from the allegedly infringed work was not protected, for example, if the copied material had itself been taken from the public domain."). Because all of the buildings in the skyline, with the exception of Mandeville Place, are not protected by copyright

---

[2] The Comcast Center was constructed when the Defendants created their sign in 2015. The Defendants were free to feature that building in the sign because "the photographer of a building… has no right to prevent others from photographing the same." *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 450 (S.D.N.Y. July 21, 2005). To hold otherwise would effectively grant Maule a monopoly on any depiction of Philadelphia's skyline featuring the Comcast Center.

9

law, the Defendants were free to use that skyline in their sign without infringing on Maule's photograph.[3]

ii

The depiction of Mandeville Place in both the photograph and sign is of course a shared similarity. Viewing both works, however, that similarity is overwhelmed by the differences between them. *See Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 291 (S.D.N.Y. Jan. 12, 2016); *see also Blehm v. Jacobs*, 702 F.3d 1193, 1203 (10th Cir. 2012) (judgment for defendant appropriate if "the protectable expression in the copyrighted work and the allegedly infringing work is 'so dissimilar…that no reasonable jury could find for the plaintiff on the question of substantial similarity'") (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir. 2002)); *see also Nimmer on Copyright* § 12.10(B)(3). No ordinary observer would overlook the fact that Maule's depiction of Mandeville Place is very detailed and realistic, created to fit in with the other actual buildings in Center City. (Ex. B.) In contrast, the sign does not attempt to realistically and accurately depict Mandeville Place; like the other buildings portrayed, it is a red, cartoon-like illustration with black lines delineating the floors, windows and outline of the structure. (Ex. E.) Further, the sense of scale and depth of both works differ. Maule's photograph shows a true to scale Mandeville Place, and because of his use of depth, the building's location next to the Schuylkill River and in front of the

---

[3] In his Response to the Defendants' Motion, Maule contends that "ten (10) identical plot points" between his photograph and the Defendants' sign demonstrate "that the Defendants stole [his] photo." (Resp. at 2.) Eight of these "plot points" are buildings that exist in Philadelphia's skyline, which are not protected by copyright law. Moreover, the Defendants did not copy the creative choices made by Maule in his depiction of these buildings for the same reasons discussed *infra*. *See infra* Part III.A.ii; *see also Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1991) ("[I]n looking at…two works of art to determine whether they are substantially similar, focus must be on the similarity of the *expression of [a] fact, not on the similarity of the facts…themselves*.") (emphasis added). The other two points consist of Mandeville Place, discussed *infra*, *id.*, and the Visit Philly Dot Com billboard that is not present in the Defendants' sign, *supra* Section III.A.i.

10

Comcast Center is clear to the viewer. (Ex. B.) The sign, however, does not feature a scaled depiction of the building, making it difficult to visualize or understand Mandeville Place's size compared to other buildings in the skyline. (Ex. E.) The sign also lacks depth, making it hard to discern whether Mandeville Place is next to or in front of the Comcast Center. (*Id.*)

The highlighting and shadows of both works also differ. Maule's photograph accentuates sunlight on the corner of Mandeville Place, depicting that light in gradations of orange, yellow and brown. (Ex. B.) The building's angle casts the rest of Mandeville Place in a shadow detailed in blue and grey colors. (*Id.*) The Budweiser sign lacks any variation in light or shading. (Ex. E.) Again, Mandeville Place is bright red with bold black lines, without any variation or gradation in color. (*Id.*) Moreover, Mandeville Place in Maule's photograph is set against a background of blue sky and clouds; the sign has no background. *See* (Ex. B; Ex. E).

Maule believes that the inclusion of Mandeville Place in the Budweiser sign shows that the Defendants copied his photograph. Crediting that belief, however, "not all copying…is copyright infringement." *Feist*, 499 U.S. at 261. Despite some similarities, most of which relate to non-copyrightable aspects of Maule's photograph, no reasonable juror could find that the Defendants' sign is substantially similar to the *protected* elements of Maule's photograph or find that both works share the same aesthetic appeal. *See Dam Things*, 290 F.3d at 562.[4]

---

[4] Because the sign did not violate Maule's copyright, the Court need not address the Defendants' fair use defense. *See* (Mot. at 16).

IV

In Count IV, Maule alleges three separate violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, *et seq.* (Second Am. Compl., ¶¶ 67–81.) The DMCA addresses the "need of copyright owners for 'legal sanctions' to enforce various technological measures they had adopted to prevent the unauthorized reproduction of their works." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3d Cir. 2011) (citing *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 458 (2007)).

A

Maule asserts that the Defendants violated § 1201(a)(2) and § 1201(b) of the DMCA by creating the Budweiser sign without the "Visit Philly Skyline Dot Com" billboard that he had digitally inserted into his picture and which he claims is a watermark. (Second Am. Compl., ¶¶ 67–74.) Section 1201(a)(2) "prohibits trafficking in devices that facilitate circumvention of *access* control measures," while § 1201(b) "prohibits trafficking in devices that facilitate circumvention of measures that protect against *copyright infringement*." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 946 (9th Cir. 2010) (emphasis in original).

Defendants refer to Maule's DMCA claim as an effort "to force a square peg into a round hole" (Reply at 8, ECF No. 25), a characterization that is accurate, if not charitable. Maule contends that by failing to include his purported "watermark" on their advertising sign, the Defendants circumvented a technological measure designed to prevent copyright infringement or access to his photograph. (Second Am. Compl., ¶¶ 70–74.) First, the sign is not a "technology, product [or] service" designed to circumvent watermarks; it is a sign promoting beer. 17 U.S.C. § 1201(a)–(b); *see also* S.

Rep. No. 105–190, at 11–12 (1998); *Murphy*, 650 F.3d at 300 (providing an example of a violation of § 1201 as software used to "crack" an encrypted DVD to make copies without the permission of a movie studio).

Moreover, what Maule refers to as a watermark is not a "technological measure" within the meaning of § 1201(a) or § 1201(b). Under § 1201(a), "technological measure" is defined as a measure which "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work," while § 1201(b) defines it as a measure that "prevents, restricts, or otherwise limits the exercise of a right of a copyright owner[.]" 17 U.S.C. §§ 1201(a)(3)(B), (b)(2)(B). Although the billboard Maule altered in his photograph spells out the name of a website, it does nothing to prevent others from accessing or copying his photograph. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (explaining that "the focus of subsection 1201(a)(2) is a circumvention of technologies designed to prevent access to a work, and the focus of subsection 1201(b)(1) is circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright.") (emphasis in original); *see also Davidson & Assocs. v. Jung*, 422 F.3d 630, 640 (8th Cir. 2005) (same).

B

Maule also alleges that the Defendants provided false copyright management information ("CMI") in violation of § 1202(a) by attaching a sticker identifying Anheuser Busch as the owner of the copyright for the sign. (Second Am. Compl., ¶¶ 18, 77.) Section 1202(a) prohibits "knowingly and with the intent to induce, enable,

facilitate, or conceal infringement" providing "copyright management information that is false[.]"  17 U.S.C. § 1202(a)(1).

Maule believes the Defendants "intentionally republished the photo, knowing (or having reasonable grounds to know)" that the sticker identifying Anheuser Busch as the owner of the sign's copyright would "induce, enable, facilitate or otherwise conceal Defendants' blatant copyright infringement[.]"  (Second Am. Compl., ¶ 77.)  First of all, Maule does not allege any factual support for his conclusion that the Defendants provided false CMI with the intent to induce, enable, facilitate, or conceal infringement. More importantly, the sticker could not facilitate or conceal copyright infringement because the Defendants' sign does not infringe on Maule's copyright.  *See supra* Section III.A.

C

Finally, Maule alleges the Defendants violated § 1202(b) of the DMCA by not including his "Visit Philly Skyline Dot Com" language on the beer sign.  (Second Am. Compl. ¶ 75–81.)  Section 1202(b) prohibits "intentionally remov[ing] or alter[ing] any copyright management information" knowing that "it will induce, enable, facilitate, or conceal an infringement of any right under this title."  17 U.S.C. § 1202(b)(1).  Maule argues again that the Defendants "intentionally republished the photo, knowing (or having reasonable grounds to know)" that the removal of a digitally enhanced reference to a website concealed Defendants' infringement on his copyright for the photo.  (Second Am. Compl, ¶ 77.)  Again, this claim fails because the Defendants' sign does not infringe on Maule's copyright.  *See supra* Section III.A.

14

Moreover, the removal of Maule's artificial billboard was not a violation of the DMCA because the billboard was not CMI under the statute. CMI is the "name of, and other identifying information about, the author of a work," and the "name of, and other identifying information about, the copyright owner of the work[.]" 17 U.S.C. § 1202(c)(2–3). Maule contends that Visit Philly Skyline Dot Com is CMI within the meaning of § 1202(c)(2–3) because it "serves as an announcement to the viewer as to who controls the photo." (Resp. at 6.) It does not. The "mark" does not contain Maule's name or any identifying information about him as the author of the photograph or owner of the copyright to that work, *see* § 1202(c)(2–3), nor does it "inform the public that something is copyrighted [or] prevent infringement." *Aaberg v. Francesca's Collections, Inc.*, No. 17-115, 2018 WL 1583037, at *7 (S.D.N.Y. Mar. 27, 2018) (quoting *Pers. Keepsakes, Inc. v. Personalizationmail.com*, No. 11-5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012)). The mere inclusion of the name of an apparent website in the picture, without more, did not identify Maule as the creator or owner of that photograph. *Compare id.* (finding that a combination of plaintiffs' names, brand name, logo and website address sufficient to constitute CMI under § 1202(c)); *Reilly v. Commerce*, No. 15-5118, 2016 WL 6837895, at *1 (S.D.N.Y. Oct. 31, 2016) (finding that removed watermark consisting of author's name, website and copyright information constituted CMI); *Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. 15-2400, 2016 WL 4257457, at *8 (D. Md. Aug. 11, 2016) (finding that a mark consisting of copyright symbol and website address that included author's name met definition of CMI under § 1202(c)(3)); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304–06 (S.D.N.Y. Jan. 4, 2011) (finding notations "Morel," "daniel morel," and "photomorel" were CMI within

meaning of § 1202(c)) *with Pers. Keepsakes, Inc.*, 2012 WL 414803 at *6 (finding that poetry.com was not CMI because the website was not the owner of the copyright for the poem at issue, nor did the website indicate poem's copyright status).

V

Federal Rule of Civil Procedure 15 permits a party to amend its pleadings with the court's permission. Fed. R. Civ. P. 15(a)(2). Courts should grant leave to amend when justice so requires unless it would cause undue delay or undue prejudice, the request is in bad faith or a result of dilatory conduct, or if amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Maule has twice been granted leave to file an amended complaint (ECF Nos. 6, 11), and has not sought leave to amend a third time. In any event, for all the reasons explained in this Memorandum further amendment would be futile. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

16